

Served
6/11/03
amt

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
JUN 11 2003
AT____ O'CLOCK____
Lawrence K. Baerman, Clerk - Binghamton

DAVID PEARLMAN,

                              Plaintiff,

     -against-                          3:01-CV-504

COOPERSTOWN CENTRAL SCHOOL DISTRICT and
MARY JO MCPHAIL,

                              Defendants.

---

## DECISION & ORDER

McAvoy, D.J.:

     Plaintiff brought this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated the Due Process clause, the Equal Protection clause, and the First Amendment rights of free speech and association.  Presently before the Court are cross-motions for summary judgment.

## I.   Background[1]

     Plaintiff was a tenured principal at Cooperstown Central Middle School.  The elementary school, middle school and high school are all in the same buildings.  Defendant Mary Jo McPhail ("McPhail) is the superintendent of the Cooperstown Central School

---

[1]  The facts are taken largely from the Decision of the Hearing Officer who presided over Plaintiff's disciplinary hearing and are supplemented by the parties' statements of facts not in dispute.

1

District ("the school district") and was Plaintiff's supervisor. "MB" was a female student at the high school. "E" is her younger sister who was also a student at the high school.

## A.  Initial Concerns

Plaintiff apparently met MB while she was a student in his sixth grade class.  In the seventh grade, MB began to babysit for Plaintiff's two children.  This continued for some time.  During the 1997-1998 school year, while MB was in the 10th grade, teachers and staff began to express concern over the relationship between MB and Plaintiff. In particular, concern was expressed because Plaintiff would regularly call MB out of class over the public address system, cause her to be late to classes, and frequently had conversations with her in his office with the door closed. These concerns continued into MB's junior year.  In February of 1998, McPhail warned Plaintiff that he should cease his personal contacts with MB, that he should not have her in his office with the door closed, and that he should limit his contact with her to school related purposes.[2]  In January of 1999, McPhail repeated these directives in a written warning issued to Plaintiff and insisted that Plaintiff cease personal contact with MB.  Plaintiff continued to seek out MB and to engage in behavior that caused faculty and

---

[2]  There is some indication that at some point in the process, MB's parents were contacted and expressed concern over MB's relationship with Plaintiff.  The record is not clear as to when this occurred.

2

staff to have concerns.  On April 7, 1999, Plaintiff was seen hugging MB in her home room class.  A teacher expressed her personal concern to Plaintiff.  Plaintiff then told McPhail about this incident rather than have it reported by the teacher. Plaintiff states that the hug was to congratulate MB for a good track performance.

### B.    Disciplinary measures

Following the April 7 incident, Plaintiff was given the option of taking sick leave for the remainder of the spring through November 4, 1999 or being suspended pursuant to New York Education Law § 3020-a.[3]  Plaintiff took sick leave.  During this time, the school district engaged in an investigation.  On November 3, 1999, the School Board determined that there was probable cause to institute disciplinary charges against Plaintiff.  The following day, Plaintiff was suspended pursuant to N.Y. EDUC. L. § 3020-a. Plaintiff requested a hearing.

From November 4, 1999 until the date the hearing was resolved, Plaintiff was forbidden from entering on school property without the permission of McPhail.  During this time, Plaintiff made approximately 102 requests to attend events on school property. Three of these requests were denied by McPhail because MB would be on school property at the same time as Plaintiff.

---

[3] Defendant disputes that Plaintiff was forced into this choice.  See Def. Response to Pl. 7.1 Stat., ¶ 8.

3

### C.   Hearing Officer's Determinations

The hearing lasted several months and concluded on January 2, 2002.  Plaintiff was found guilty of conduct unbecoming a principal because he had met with MB behind closed doors in his office, caused her to be late to class, and regularly telephoned MB at her home, not only for babysitting services but also for other personal conversations.  In addition, the Hearing Officer found that Plaintiff regularly used the school's public address system to call MB into his office to discuss personal topics with her and that Plaintiff had given MB a very personal poem.

Plaintiff was additionally found guilty of insubordination. The Hearing Officer found that on Feburary 4, 1998, McPhail met with Plaintiff and directed him to never again have MB in his office with the door closed; to engage MB in conversation only for reasons related to his job; and to engage in conversations with MB only in a public setting.  The Hearing Officer further found that despite these directions, Plaintiff continued to contact MB for personal reasons both at school and at her home, and closed the door to his office with MB inside on one occasion.

The Hearing Officer determined that Defendant McPhail again met with Plaintiff on January 8, 1999 and repeated her directions that Plaintiff not have unnecessary contact with MB and that all contact be school related and take place in a public place. Following this meeting, McPhail put this information in a written

4

memorandum and sent it to Plaintiff.  The Hearing Officer found

that despite this second warning, Plaintiff repeatedly followed MB

around school, made excuses to contact her, and regularly engaged

her in non-business related conversations.  Further, the Hearing

Officer found that Plaintiff followed MB to her empty home room

and was observed hugging her prior to class and that on one

occasion, he went to her computer class and held up signs that

said "sorry" and "I miss you."

Plaintiff was given a three month suspension without pay.

Thereafter, Plaintiff returned to work and instituted this

lawsuit.


## II   Discussion

### A.    Standard for Summary Judgment

It is well settled that on a motion for summary judgment, the

Court must construe the evidence in the light most favorable to

the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593

(2d Cir. 1999), cert. denied, 529 U.S. 1098 (2000), and may grant

summary judgment only where "there is no genuine issue as to any

material fact and ... the moving party is entitled to a judgment

as a matter of law."  FED. R. CIV. P. 56(c).  An issue is genuine if

the relevant evidence is such that a reasonable jury could return

a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477

U.S. 242, 248 (1986).

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**B.    The Complaint**

**1.    Due Process**

In order to survive summary judgment on the alleged deprivation of due process, plaintiff must put forward evidence, "(1) that he had a protectible property . . . interest; (2) that he was deprived of that interest; and (3) the deprivation was effected without due process." Monroe v. Schenectady County, 1 F.Supp.2d 168, 171 (N.D.N.Y. 1997)(citations omitted).

Whether a property interest exists is determined by state law. Flood v. Co. Suffolk, 820 F.Supp. 709, 712 (E.D.N.Y. 1993)(citations omitted). Plaintiff alleges that New York Education Law section 3020-a provides him with a property interest in not being suspended from his job prior to an administrative

6

hearing.  Section 3020-a(b), however, provides: "[t]he employee may be suspended pending a hearing on the charges and the final determination thereof.  The suspension shall be with pay . . ." Consequently, Section 3020-a does not provide Plaintiff with a right not to be suspended prior to the hearing officer's determination.  Indeed, the law specifically provides for suspension prior to the hearing as long as that suspension is with pay.  There is no allegation here that Plaintiff's suspension was without pay.  Consequently, Plaintiff has no property interest in a pre-suspension hearing.  See Gouldin v. Board of Education of Central School District, 357 N.Y.S.2d 867, 870 (2d Dep't 1974) (suspension prior to hearing not unconstitutional.)

Plaintiff also contends that he had a liberty interest in attending events on school property without first having to ask McPhail's permission.  Plaintiff does not, however, cite to any state law or authority granting him unfettered access to school property, either as a citizen or a parent.  Indeed, the New York Court of Appeals has held that local school districts have great discretion in determining who shall have access to school property and school students.  See Lloyd v. Grella, 83 N.Y.2d 537, 547 (1994).  "The long-standing deference afforded local school boards to exercise ultimate authority for access to students, school buildings and school property generally is well founded." Id.; see also Hone v. Cortland City School District, 985 F.Supp. 262, 272

(N.D.N.Y. 1997) ("Looking to New York State law, the court can find no support for the proposition that Plaintiff enjoyed any right of access to school property."). Even where a school board member was denied access to schools except to perform his limited function, the Second Circuit found no right had been violated. See Silano v. Sag Harbor Union Free School District Board of Education, 42 F.3d 719, 724 (2d Cir. 1994), cert. denied 515 U.S. 1160 (1995) ("Silano did not have an unrestricted right to enter the school classrooms or hallways").

Further, Plaintiff was provided with access to the school property when he requested it on all but three occasions. On these three occasions, McPhail concluded she could not prevent contact between Plaintiff and MB or her younger sister E. See Silano, 42 F.3d at 724 (no liberty interest implicated where board member provided access sufficient to complete necessary work). Plaintiff has failed to come forward with any state granted right to access school property at his choosing. Consequently, Plaintiff's due process claim is dismissed.

### 2.  Equal Protection

Plaintiff next argues that he was denied equal protection by not being allowed on school property and not being given different work assignments. "The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499

(2d Cir. 2001) (citing <u>City of Cleburne v. Cleburne Living Ctr.</u>,
473 U.S. 432, 439 (1985)).   To allege a violation of the Equal
Protection Clause, the Plaintiff must put forward evidence

> (1) that [he was] treated differently from other
> similarly situated individuals, and (2) that such
> differential treatment was based on 'impermissible
> considerations such as race, religion, intent to inhibit
> or punish the exercise of constitutional rights, or
> malicious or bad faith intent to injure a person.'

<u>Harlen Associates</u>, 273 F.3d at 499 (quoting <u>LeClair v. Saunders</u>,
627 F.2d 606, 608-610 (2d Cir. 1980); <u>LaTrieste Rest. & Cabaret v.
Village of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994)).

Here, Plaintiff was clearly treated differently than other
school district employees in that he was suspended from his
position for a period of time.[4]  Plaintiff has failed, however, to
proffer evidence from which a reasonable trier of fact could
conclude that the difference in treatment was based on some
impermissible consideration.  Plaintiff has not even put forward
evidence from which a reasonable trier of fact could find a bad
faith intent to injure him in some way.  The School District has
contended, and Plaintiff has not refuted that Plaintiff's
suspension and order to stay off of school property were in place
because of Plaintiff's failure to avoid contact with MB.   The

---

[4]  It is questionable whether Plaintiff was similarly situated
to other school district employees.  Plaintiff identifies no other
school district employees who were accused of having inappropriate
relationships with students, or any other school district employees
who were under suspension but were treated differently.

School District had an interest in preventing further contact between Plaintiff and MB.

Additionally, the school district became aware that Plaintiff had, on at least one occasion, attempted to contact MB through her younger sister E. Finally, Plaintiff was granted access to the school property on each occasion he requested access except the three instances where contact with MB was determined to be unavoidable.

With regard to Plaintiff's claim that he was treated differently than other school district employees because he did not have work to do, Plaintiff again fails to put forward any evidence of an impermissible motive.[5] Plaintiff stated at his deposition that he did have periodic assignments during the first year of the suspension, but that during the second year he had no work to do. Pl. Dep. p. 77-79. Even assuming that Plaintiff had absolutely nothing to do during the second year of his suspension, Plaintiff has failed to put forward any evidence that this was because of a desire to maliciously harm him. Indeed, Plaintiff does not put forward any evidence of any malicious intent in not providing him additional work duties. Because Plaintiff has failed to put forward any evidence from which a reasonable trier of fact could conclude he was treated differently for some

---

[5] Again, it is questionable whether there are any other *similarly situated* employees. Plaintiff does not identify what treatment was given to other employees on suspension.

impermissible reason, Plaintiff's equal protection claim must be dismissed.

### 3.   Free Speech and Association

Plaintiff's third claim is that his rights to free speech and association were infringed when he was instructed not to "harrass[] or tak[e] any retaliatory action against any teacher or student involved in this case or their friends or relatives, or any other potential witnesses for the district." Pl. Mem. L. 15. Plaintiff also seems to assert his First Amendment rights were infringed when he was not permitted to contact MB in any way.

The Court must first begin with the proposition that casual conversation is not protected by the First Amendment. See Swank v. Smart, 898 F.2d 1247, 1251 (7th Cir. 1990). Plaintiff does not assert that he sought to speak out against some public policy or challenge his own dismissal, but was prohibited from doing so. Compare Gros v. Port Washington Police District, 944 F.Supp. 1072, 1077 (E.D.N.Y. 1996). Rather, he seeks to assert a right to converse with various school district individuals, a right not protected by the First Amendment. Consequently, Plaintiff has failed to establish that his First Amendment rights were violated.

Even if the Court were to apply the test Plaintiff suggests, based on the regulation of the content of his conversations with others while on school property, he could not prevail. As this

11

Court has previously held, a school, during school hours, is a non-public forum.  See Hone, 985 F.Supp. at 271.  Thus, the restrictions on conversations with school employees and students will be upheld if they are "reasonable and narrowly tailored." Id.; Kuntz v. New York State Bd. of Elections, 924 F.Supp. 364, 371 (N.D.N.Y. 1996), aff'd, 113 F.3d 326 (2d Cir. 1997).

The restrictions at issue prohibit Plaintiff from harassing or retaliating against teachers or students involved in his disciplinary action.  There is nothing vague about those terms. Further, it was reasonable for the school district to require Plaintiff not to harass or retaliate against teachers or students at the school.  Plaintiff has put forward no evidence that the words "harass" or "retaliate" were construed by McPhail or the School District in some way that violated his constitutional rights.  It is sheer conjecture that the terms "harass" and "retaliate" would have been construed to prevent Plaintiff from all contact with teachers and students.  Such conjecture is insufficient on a motion for summary judgment.  See  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

With regard to MB, the requirement that Plaintiff cease contact with her was reasonably tailored to prevent the further appearance of an inappropriate relationship, to assuage the concerns of faculty and staff at the school, and to ease MB's parents' concerns regarding the relationship.  Plaintiff has

12

failed to put forward any evidence from which it could be found that some less restrictive rules would have achieved these goals. Consequently, his First Amendment claims must be dismissed.

**4.   Travel**

Finally, Plaintiff asserts that his right of "travel" was impeded by the requirement that he not enter school property without permission.  As the Court has already noted, Plaintiff had no right to enter school property, and the regulation of the School Board in this respect was reasonable.

**C.   Qualified Immunity**

In the alternative, Defendant McPhail is entitled to qualified immunity.  In determining whether qualified immunity applies, the Court must first consider whether "a constitutional right would have been violated on the facts alleged." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).  The Court has already determined that no constitutional right of Plaintiffs was violated here. But, assuming arguendo that one was violated, the Court finds that a reasonable superintendent in McPhail's position would not have known that her conduct was unlawful.  <u>See Saucier</u>, 533 U.S. at 198; <u>Cerrone v.Brown</u>,246 F.3d 194, 202 (2d Cir. 2001); <u>Vega v. Miller</u>, 273 F.3d 460, 466 (2d Cir. 2001).  McPhail attempted, through two meetings with Plaintiff, to make him aware of the seriousness of the situation, and, when Plaintiff was unable to control himself, McPhail removed him from the school to protect

13

the reputation of the school district as well as to protect a minor student.  McPhail's acts of requiring Plaintiff to gain permission prior to entering school property were reasonably related to her goal of protecting the school district and the student in question.  Further, she did not unreasonably deny Plaintiff the opportunity to enter the school property. Consequently, at the very least, reasonable superintendents could disagree whether McPhail's actions violated Plaintiff's constitutional rights.

Because of the foregoing, the Court does not address the remaining arguments of the parties.

**III.      Conclusion**

Defendant's motion for summary judgment is **granted**. Plaintiff's cross-motion for summary judgment is **denied**.   The Clerk is directed to close the file.


**IT IS SO ORDERED**

June  __11__ , 2003

_Thomas J. McAvoy_
_____
Hon. Thomas J. McAvoy
U.S. District Judge

14